We have four appeals that are scheduled for oral argument this morning, and I see that counsel are ready to go in the first case. It is Michael Baxter v. Louis Roberts and Trevor Lee, and Marie Maddox is here for the hearing. Ms. Maddox, you may begin. Marie Maddox, Counsel for the Appellant Thank you, Your Honor. My name is Marie Maddox, Counsel for the Appellant, Michael Baxter, and our argument on appeal is that the district judge erred in granting summary judgment in favor of both defendants, the sheriff and Deputy Lee, and also erred in excluding the statements, the testimony of Corey Finch, and I'm going to be very brief with the facts except for the The incident occurred on December 24, 2017. Mr. Baxter was traveling home, stopped, bought a beer at a convenience store, and then he was stopped by Deputy Lee, and the claim was that he was weaving in and out of the road, over the line, et cetera. Our argument on that issue is that there is a disputed issue of material fact as to whether he was weaving at all. He has disputed that. He said he didn't do that, wasn't going back and forth. He did admit that he was on his cell phone, but not that he was weaving in and out. So on that issue, as to whether he should have been stopped to begin with and was weaving in and out, there's a disputed issue of material fact, which we believe should have precluded summary judgment. When Deputy Lee came up and told Mr. Baxter that he was all over the road, why is Mr. Baxter, in response to that, that he was, quote, trying to make a phone call, why wasn't that a concession that he was indeed driving carelessly? Your Honor, it could be, and I, you know, for the sake of, and we've said in his affidavit and in his deposition testimony both, he has said that he was not weaving, he was not going in and out, but I do understand that on the initial stop, could the court, you know, looking at the facts, could the court have found that there was a legitimate reason for the stop, the initial stop, perhaps? But that's as far as it goes, because once you have the initial stop and you look at the Rodriguez v. United States case, and this case falls squarely within Rodriguez v. United States, and there, what the court said, and this court and multiples of others have talked about how long the stop can be, and that it only can be as long as necessary to accomplish what the goal is, a relatively brief encounter, to accomplish what the goal of the stop is. So if he was stopping him in order to give him a citation for weaving in and out, and one of the facts I believe that supports the appellant in this case, that he was not weaving in and out, is the fact that he never got a citation. There was never a citation for this open container, never got a citation for weaving in and out. The only thing that he was accused of was the attempting to resist arrest. So not giving him a citation, I believe there is a factor that would be in his favor to show that there was, in fact, a disputed issue of material fact as to whether he was weaving in and out. But this case really starts when the stop occurs. And after the stop, and from the point that Mr. Lee got hit to the passenger door of Mr. Baxter's vehicle, and I believe that what the defendant will argue, the appellee will argue, is that well, you know, because of officer safety concerns, that the officer was entitled to ask Mr. Baxter to get out of his vehicle. But that's not borne out, and that's not what the law says, and that's not what Rodriguez says. And what Rodriguez says is, like a Terry stop, the tolerable duration of police inquiries in the traffic stop context is determined by the mission to address the traffic violation that warranted the stop to begin with. And here, if you look at the time between 1.46, and this is on the video, 1 minute 46 seconds, where Lee gets to the passenger door window, he goes back to his vehicle, he then checks to do the things that you would normally be accompanying a normal traffic stop. And he ran his driver's license, ran his whatever other things that a law enforcement officer would normally do. He then came back to the window, and he told him there was no sign of intoxication at that point, and then he returned back to the truck at 7.59. That is six minutes. I think everything after the stop, you got a tough road to hoe. Because of the video, because of the fact that he resisted Lee's commands, he didn't give him his keys, there was a struggle. And as far as the force that was used, you know, I don't really see that it is meaningly different from the force that was used in Myers v. Bowman and Rodriguez v. Ferrell, cases that are cited in the brief. I think your strongest argument is that the similar judgment was improper with regard to the initial stop itself. Not anything that happened after that. That was on the video. Yes, Your Honor, I understand. Judge, I would just argue, Your Honor, under the Rodriguez v. United States case, and I would cite, because what the court has said there is that ordinary inequities or inquiries incident to the traffic stop, that's all that would be allowed. But there's an open container issue, doesn't that justify further inquiries? No, Your Honor, not in this case, and the reason is that it was only partially opened. And so he said that he cracked it, but it was not completely opened. The beer was not. There was no roadside sobriety test. And, by the way, the time when he was told that he needed to get out of the vehicle and said, I'm going to walk my dog around your car, there was no criminal, there was no thought that there was any criminal activity by him. And you can only ask someone to get out of the car under the United States case MEMS when you can articulate some reason, and it's not just the de minimis inconvenience, as the court discussed in Rodriguez, but you've got to have an articulable reason. And here, when they asked him to get out of the vehicle, there was no criminal suspicion of any criminal activity, and gratuitously, he said, and this is at the 5.30 time period on the video, I'm going to give you a warning, and I'm going to walk my dog around the car. Well, under Rodriguez, if he's going to give him a ticket, a warning ticket, then he needed to do that. Why did he go further and say, I'm going to walk my dog around the car? Because that would be illegal under Rodriguez. What's in, I mean, there's some history between this motorist, Baxter and Lee, before, right? What is there in the record with regard to the history between them before? They knew one another, right? Your Honor, you're right. They did, but I don't know the extent, and I'm not, I don't know how. That's not in the record? I'm not sure how detailed it is. I know that he had said he had had some encounters with Lee before. He did. And then after this, there were some encounters. There were, and he said that. There's a record that even after this was over, he would drive up behind him and turn his lights on. And then drive on by. To harass him, and then drive by without stopping him. Yes, sir. Okay. Yes, sir. Did the court take that into consideration? I don't believe so. I don't think that that was even an issue before the district judge, but I would just direct the court to Rodriguez, which I'm more than sure y'all are aware of. But what the court said there is that a dog snuff, by contrast, is a measure aimed at detecting evidence of ordinary criminal wrongdoing. You've got to have some probable cause. There was no roadside sobriety test. If he thought that he'd been drinking, and it's clear from looking at the video, that he does not appear to be impaired. So, this officer, under the Rodriguez case, could not go beyond just the ordinary inquiries that would accompany a normal traffic stop. When he said, and it stopped at the point where he said, I'm going to go and write you a warning. If we disagree with you that the only inquiry we're looking at is the traffic stop, if we say partially open container is open container, where do you lose? How critical is that piece of the puzzle to you, that we're only looking at the traffic stop? If you say we have an open container violation that extended the stop, do you still have a Rodriguez claim? Absolutely, Your Honor, and the reason is that the officer didn't take the beer, pour it out. The officer did not make any effort at all to determine whether Mr. Baxter was impaired. He said, I'm going to give you a warning. That's on the video. But we also have Mr. Baxter both verbally and physically resisting several of Deputy Lee's instructions. But if you back it up, and you don't have the ability to instruct him to get out of the vehicle to begin with, because that's the MEMS analysis, and if you look at MEMS, MEMS says for officer safety. Well, he doesn't tell him to get out of the truck for 6 minutes and 13 seconds, and that would defeat any argument at all that the defendant could make that there was any officer safety issue. So he had been back and forth to the truck, never . . . Are you suggesting that an officer can only order a driver out of the car immediately? No, ma'am. That the situation can't develop where the officer becomes concerned for his or her safety? Absolutely, they can. But this is not that case. The facts of this case do not support a finding that there was any officer safety issue. What Mr. Lee actually told him was that I'm going to take you out of the vehicle or get out of the vehicle so I can do the dog sniff. And what the cases have said is that an on-scene investigation into other crimes, however, detours from the mission of the stop. And that is from Rodriguez. There's a statement that you sought to have the court consider in opposition to the motion for summary judgment. This is a statement by Corey Finch, who is another deputy, and this is a statement that this Officer Lee and another officer, Zachary Wester, were making traffic stops without probable cause. But the statement was offered after the close of discovery. Is there any explanation for why there was an untimely disclosure of the statement? No, it wasn't just us, and we brought this up in our brief as well. The defendant also, and this is under, the question is the Rule 26 disclosure. It's not, and it was not, not disclosed. Corey Finch has been involved in the Wester, this case was consolidated with 40 other cases involving Mr. Wester and Mr. Lee for false arrest. But I guess my question is, the court didn't allow, the court didn't consider it because it was not timely disclosed. And so, this is an issue on appeal. Is there an explanation? We said, we've said before in our case law that we'll take into consideration an explanation for the untimely disclosure. I'm trying to figure out what's the explanation for the untimely disclosure. He was disclosed. And, Your Honor, he was previously disclosed. This case had been consolidated with the Wester, all of the Wester cases. Statement itself was timely disclosed? We took the sworn statement later. No, sir. Mr. Finch himself was timely disclosed. And we have filed as one of the exhibits, Exhibit 130, and it was filed as 41-4. And Mr., so Mr. Finch, and that's under the Rigby case to look at the explanation for the failure to disclose because he was, had already been disclosed during the Wester case. So our explanation is that it's not, the statement may not have been disclosed, but he was a Wester case. And that document, Exhibit 44, was a document that the defendant actually gave to us. So Baxter's individual suit against Deputy Lee was consolidated with the Wester set of cases? Yes, Your Honor. It was initially, and then it was separated out, but his deposition, Baxter's deposition, and Lee's deposition were all taken in the consolidated case. And so all of this FDLE evidence came out in 2019 in the Wester case. And so when it was still consolidated with Mr. Baxter. So the, at one point, the district court filed a suggestion of consolidation in which it suggested that Baxter's suit may present common questions of factor law with the Wester cases. But then in response, the parties jointly informed the district court that they did not believe this court, this case should be consolidated with the Wester cases. And the reason was, at that time, because Mr. Wester himself was not involved, but Mr. Lee has been a common denominator in the Wester cases and at least eight to ten of those cases as well. So how can you suggest on appeal that the defendants in this case should have known that Baxter might use Finch as a witness if these are, if the parties agreed these were unrelated cases that should not have been consolidated? They should not have been consolidated because of the planning of evidence. And it was the planning of evidence that was the key denominator, the common denominator in all the Wester cases. But the question was whether this was, Mr. Finch was disclosed as a witness. And the document that talks about Mr. Lee by Mr. Finch was during the FDLE investigation. And that statement was produced to us during discovery in the consolidated case before this case was separated out. They have known about Mr. Finch from the inception. All right. You've reserved a few minutes for rebuttal. Thank you. Yes, sir. Thank you. Ms. Yarbrough. May it please the Court. My name is Alyssa Yarbrough and along with Timothy Warner, we represent the Sheriff and Deputy Lee as the appellees in this matter. As Judge Rogers stated in footnote 16 of her order granting Deputy Lee and the Sheriff's summary judgment, had Mr. Baxter complied with Deputy Lee's lawful commands to exit the vehicle, then the analysis in this case may very well be different. But that is not what the record evidence establishes. The record evidence by way of video, which the Supreme Court has said in Scott v. Harris, that if video evidence is available, then the party's claim should be evaluated under that video evidence. When does the video start, after he gets out of the car? Your Honor, the video starts briefly before when Deputy Lee actually radios to dispatch that he is pulling over a suspect for weaving within the lane. Okay. But there was no video of the stop itself. There was no dash cam video that would demonstrate whether or not, well, he stopped him because, what did he say, he crossed the center line several times? Correct, Your Honor. There's no video of that. Correct, Your Honor. There is no video of Mr. Baxter's vehicle crossing the center line because the video comes from Deputy Lee's... So the reason for the stop was that he said he crossed the center line, but he passed the car in front of him. And that's the reason why he stopped him, right? That's the... He stopped him for a traffic violation, for crossing the center line. There's no video of that. There is no video of Mr. Baxter's vehicle crossing the center line. Okay. And so, Mr. Baxter says, I did not cross the center line. All I did was I passed the car in front of me and Deputy Lee did the exact same thing. So safety was not jeopardized. So what I'm trying to figure out is, isn't the jury entitled to decide whether or not to believe Baxter or to believe Lee, especially if we look at the evidence in a light most favorable to Baxter, it seems to me there's a genuine issue of material fact with regard to the initial stop. Because the jury can decide, based on all this other evidence in the record, there's evidence of harassment, both before and after, why can't the jury believe Baxter and not believe Lee? In this case, it's not appropriate to go to a jury because the collective evidence establishes that Mr. Baxter was weaving within the lane because when Deputy Lee... He says he wasn't. Why can't the jury believe him? He says he wasn't now, but that's not what he said on the video evidence. On the video evidence, he says, I was just trying to make a phone call. And it's also seen that he's trying to... There's no video with regard to whether or not he crossed the center line, right? No. There's no video that directly shows that, no, Your Honor. He says I didn't cross the center line, so he shouldn't have stopped me. And so if that's the case, I mean, the officer didn't even give him a citation for crossing the center line, did he? No, Your Honor, and there's no case law that says an officer must give an individual a citation for the reason for the initial stop. He didn't even give him a citation for having an open container?  He did? Yes, Your Honor. Okay. All right. Mr. Baxter's... The phone call response, as I understand it, was in response to the officer's statement about weaving. Correct, Your Honor. The deputy approached the vehicle at about 1 minute and 46 seconds into the stop and said, the reason for the stop is you were all over the road, and Mr. Baxter responded, I was just trying to make a phone call. But he does say that I didn't cross the center line, though, doesn't he? That all I did was pass the car in front of me. No, Your Honor, he does not say that until later in his deposition. During the traffic stop, he asked Mr., or Deputy Lee, he asked Deputy Lee if he was talking about back by the red light, and Deputy Lee explains, no, it was way back past Highway 71. I've been following you for a bit. Doesn't it appear from this record that this officer really was harassing him even after, long after this incident was over? He would pull up behind him and turn on his lights and then pass him by several times. If this case went to trial, would the jury be entitled to consider that evidence in support of his claim that the initial stop was illegal? No, Your Honor, because under Wren v. United States, the subjective intent of the officer conducting the traffic stop is irrelevant in an evaluation of the claims. Of course, that would be an issue that the district judge would have to consider, whether or not that evidence is admissible, right? Correct, Your Honor. And there is no supporting evidence that Mr. Baxter ever made any complaints against Deputy Lee regarding these two later encounters that occurred after this traffic stop, not prior to. Thank you. The sheriff and Deputy Lee would submit that this court should affirm the judge's order granting motions for summary judgment and the motion to strike, specifically because, first and foremost, there was no constitutional violation of Mr. Baxter's rights. It's well established by the undisputed evidence and the video evidence in this case that Deputy Lee was working within the course and scope of his duties as a deputy with the Jackson County Sheriff's Office on the night of December 24, 2017, when he conducted the traffic stop on Mr. Baxter. Since there is no constitutional violations and Deputy Lee was acting within the course and scope of his duties, then he's entitled to qualified immunity and it is up to the plaintiff, or Mr. Baxter in this case, to establish that qualified immunity does not actually apply. And furthermore, since Deputy Lee was acting within the course and scope of his duties and there is no constitutional violation, the sheriff is not liable under Monell. Let me ask you a Rodriguez question. So, opposing counsel has argued that even assuming there's an initial traffic stop, even assuming we have an open container that is spotted, that Baxter was ordered out of the car, not for officer safety, but to conduct the drug sniff around the car. How are we not now entering the territory that Rodriguez forbids us, that this is impermissibly extending the traffic stop? Well, there are some basic differences between Rodriguez and the case involving Mr. Baxter. And the most important distinction is in Rodriguez, the case, the officer had issued the traffic citation. He had physically handed the traffic citation to Mr. Rodriguez. Mr. Rodriguez was then free to go and then the officer asked permission to run the dog around the car. But surely you're not suggesting that Rodriguez gives officers the right to just hold off on issuing the citation and they can do whatever they want until the citation is issued. Oh, absolutely not. The, under Illinois v. Covias, if a dog sniff doesn't prolong the mission of the traffic stop, then a dog sniff is allowed unless it violates the privacy interest of the individual, which we don't have in this case. And what Mr., what Deputy Lee was doing when he conducted the traffic stop was he was dispelling the concern and making sure that the vehicle and Mr. Baxter were operating safely as required under those missions that are expressed in Rodriguez. When did this record reflect that the officer first became aware of the open container? It was after he stopped him for crossing the center line. Is that, is that right? Correct, Your Honor. He became aware of the open container after he stopped and after he approached the vehicle. So he was not aware of the open container before he stopped him. He was not aware of the open container before he stopped, but under Florida state law in Roberts v. State. Well, he opened the door, the passenger door is what he found out, wasn't it? I believe he was looking through the window, but yes, when he approached the passenger side. Yeah, and he opened the door and there was a container. Correct, Your Honor. And so he observed it after he made the lawful traffic stop for swerving, which the state of Florida has found that swerving within a lane is a permissible reason, a reasonable reason, to justify a traffic stop on an individual, specifically in Roberts out of the 3rd DCA. I understand that, but I guess my concern is that Baxter says I was not swerving. All I did was pass the car in front of me, which I was permitted to do, and then Lee did the exact same thing. That's, I mean, that's his, that's what he says in this record though, right? That is what Mr. Baxter says now, months after the traffic stop. That is not what he said initially when the traffic stop occurred. And he specifically asked Mr., or Deputy Lee, if he was referring to an instance back at a red light. He doesn't mention passing a car, he doesn't mention anything, so the record evidence would support that Deputy Lee was justified in conducting a stop for weaving. When did he make that first statement to Deputy Lee? Yes, Your Honor. He made the first statement to Deputy Lee, I believe it was about three minutes into the traffic stop. Okay, all right. And so when he says I was not doing it, where is that in the record? That is in his, his deposition. In his deposition? Yes, Your Honor, that is my belief. All right. So if the case went to trial, he could not tell the jury that the statement that I made in my deposition is accurate? Mr. Baxter would be able to say, but the, the evidence shows... If he's cross, I mean, he'd be cross-examined by making a prior inconsistent statement, right? Correct, Your Honor. He could testify at trial that I was not weaving and swerving and I did not illegally cross the center line. And I guess my concern is why couldn't the jury believe him and not believe Deputy Lee? That's the concern that I have about this case. Because the direct evidence that's available in this case that is undisputed, that's provided by the video, establishes... This isn't whether or not he was weaving and swerving or he crossed the center line. It's not on any video, right? No, Your Honor, but what is on video is Deputy Lee radioing in, saying he has a suspect who's weaving and he's conducting a traffic stop. He's alerting dispatch. Okay, that's on the video. That is on the video. But there's no dash cam video about whether or not he was weaving and swerving or crossing the center line. Is that right? No, Your Honor, there is no dash cam video. Okay. And pursuant to Rodriguez, Rodriguez states that determining whether to issue a traffic ticket, an officer's mission during a traffic stop also includes checking driver's license, determining whether there are outstanding warrants, inspecting the vehicle's registration and proof of insurance. And it's evidenced by the video in this case that Mr. Baxter was unable to locate some of those documents that was requested. Initially, he provided Deputy Lee with his license, but he was still looking for his insurance and registration when Deputy Lee went back to his vehicle the first time. And then these checks, according to Rodriguez, serve the same objective as enforcement of the traffic code. And that is to ensure that vehicles are operated safely on the road. Driving under the influence is a traffic code violation as well as a criminal offense. And weaving within a lane justifies a reasonable officer and a reasonable officer acting in Deputy Lee's capacity to stop a vehicle to investigate. Was he driving under the influence? I mean, was there a field sobriety test? No, Your Honor, and there doesn't have to be. And there wasn't a field sobriety test because it didn't get there because Mr. Baxter failed to comply with Deputy Lee's lawful commands to exit the vehicle under Pennsylvania v. Mims and Arizona v. Johnson. And when Deputy Lee approached the vehicle to ask Mr. Baxter to exit the vehicle, it was eight minutes into the stop. Mr. Baxter refused Deputy Lee's commands no less than eight times in a one-minute period of time. From eight minutes to nine minutes in the traffic stop, Deputy Lee instructed him to exit. It was only once Deputy Lee radioed to dispatch reporting that he had an uncooperative suspect, that Mr. Baxter voluntarily agreed to get out of the car, which Deputy Lee allowed. He stepped back and allowed Mr. Baxter to exit the vehicle. He had also instructed Mr. Baxter multiple times to get off of his phone and to hand the keys to him. And once Mr. Baxter was out of the vehicle, he asked Mr. Baxter again for the keys and Mr. Baxter refused. When he refused, it was at this point, nine minutes and 17 seconds into the stop, that Deputy Lee put his hands on Mr. Baxter, placed him in handcuffs, and then by nine minutes and 40 seconds, so less than 30 seconds after he initially touched Mr. Baxter, he was detained and being walked to the patrol car. While not binding on this court, a district court in Ohio has held in 2021 that a delay is not unreasonable when it is the suspect's own actions that ultimately cause the delay. And that case is U.S. v. Tushoff. Furthermore, an excessive force claim is subsumed into a false arrest claim should there be a false arrest. But since Deputy Lee and the sheriff submit that there was no false arrest, the excessive force claim may survive under Jackson v. Sahls. But de minimis force in this court has held continuously that de minimis force is not sufficient to survive a motion for summary judgment when the force is used to effect a lawful arrest. And Mr. Baxter was in violation of Florida Statute 843.02 when he obstructed Deputy Lee's instructions on exiting the vehicle. And pursuant to Florida Statute 768.289 for the state law claims of battery and false arrest, the sheriff is entitled to statutory immunity and Deputy Lee would be or Deputy Lee is entitled to statutory immunity and the sheriff would be entitled to sovereign immunity. Thank you. Thank you, Ms. Yarbrough. And Ms. Maddox, you reserve some time for rebuttal. There is a disputed issue of material fact and he is subject to cross-examination. But I wanted to point out that there's no inconsistency between what he said on the video when he said, I was on my phone and what he later said that I was not weaving. There's no inconsistency because he never denied, he never said or admitted during the original stop that he was actually weaving. All he did was say, I was on my phone. So he's not making an admission. Well, that sounds like an excuse for weaving, that he was on his phone. Yes, Your Honor, and that could be an argument that they make to the jury. But he's not, there's not an inconsistency between what he said. It could, you're absolutely right, it could be an excuse that he's offering. And how could a jury interpret that? He's explaining why his conduct was what it was. Well, but he also said and has testified in both his declaration that he's filed and in his deposition that he was not weaving, he did not go across the line and that Officer Lee, Deputy Lee followed him and did exactly the same thing that he did. So I want to address just for a minute two issues. One is to go back to the Rodriguez case. So after the stop, which we claim disputed issue of material fact, the question is whether the officer was allowed to do anything further other than do what they would reasonably do in diligence in pursuing a traffic-related purpose of the stop. And the government argued in the Rodriguez case that the officer may incrementally prolong a stop to conduct a dog sniff so long as the officer is reasonably diligent in pursuing the traffic-related purpose of the stop. And the overall duration remains reasonable. The court rejected that and what the court said is if an officer can complete a traffic-based inquiry expeditiously then that is the amount of time required to complete the stop's intrusion. What about the fact that Mr. Baxter was still looking for some of his paperwork? And he went back to the car, he gave him all of his paperwork and he had given, there was no question about Mr. Baxter's license came back without any hits on it, nothing. And he told him I'm going back to the car to write you a warning. That's all he said and that's how long it would take to write the warning. Instead he says I'm going to, and I'm going to walk my dog around the car. Well if he was just going to walk his dog around the car then why did he have Mr. Baxter get out of the vehicle? And under the Rodriguez case having him get out of the vehicle would go too far because it exceeds the scope of the stop. And the question and in the Rodriguez case what the court said is the question of whether reasonable suspicion of criminal activity justified detaining  beyond completion of the traffic infraction therefore remains open for the circuit court on remand. And there was no question here  there was any criminal activity, none, at all. There was nothing and he said when he said walk my dog around the car there was no question about whether there was no suspicion suspicion of any criminal activity. And I see that my time is almost expired but I just would mention the gram factors and looking at the need for the application of force and this court has held consistently that the gratuitous use of force when a criminal suspect is restrained not resisting constitutes excessive force. He chipped his tooth. He had to have medical treatment. The force required was and the entries were not de minimis we request  judgment order be reversed. Thank you. Thank you. Next case is Elkin King.